PHYLLIS J. TOLLE *et al.*, Plaintiffs-Appellees, *v.* INTERSTATE SYSTEMS TRUCK LINES, INC., Defendant-Appellant.—(CHESTER HAYMORE, Defendant.)

Fifth District   No. 75-396

Opinion filed October 26, 1976.

Hoagland, Maucker, Bernard & Almeter, of Alton (Robert B. Maucker, of counsel), for appellant.

Burroughs, Simpson, Wilson, Hepler & Broom, of Edwardsville (Robert W. Wilson, of counsel), for appellees.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

This is an appeal from a portion of a judgment entered by the circuit court of Madison County in favor of the plaintiffs-appellees Tolle and

against defendant-appellant Interstate Truck Lines, Inc., hereinafter referred to as "Interstate."

Interstate contends the trial court erred in denying its motion for judgment notwithstanding the verdict as to the punitive damages count. Appellant contends that vicarious liability of a principal for punitive damages is limited to instances where the principal authorized the act, ratified the act, recklessly employed an unfit servant, or the servant was employed in a managerial capacity and acted within the scope of his employment. Appellant also urges that punitive damages may be assessed only where the evidence supports a finding of intentional, malicious, oppressive, or outrageous misconduct. Appellant finally contends an assessment of punitive damages violates certain constitutional rights.

On March 24, 1973, defendant Haymore was traveling eastward on Interstate 270 in the inner lane next to the median strip. Haymore began to pass a tractor-trailer unit later identified by an eyewitness as bearing the insignia and color of Interstate. The tractor-trailer unit moved gradually from the outer lane toward the inner lane occupied by Haymore's vehicle, without giving a left turn signal. Defendant Haymore testified that he blew his horn, used his brakes, and attempted to steer away from the collision. Nevertheless, impact between the vehicles occurred at the left rear tandem of the trailer and the right rear of the Haymore vehicle. The impact forced the Haymore vehicle across the median strip into the path of a vehicle heading westward on Interstate 270 in which the plaintiff Phyllis Tolle was riding. The driver of the Interstate truck did not stop and testified that he was unaware of any collision, but the evidence indicates a report was filed with Interstate by the driver Hernandez indicating a possible accident involving property damage.

The complaint against defendant Interstate proceeded in three counts. In Counts I and II, the defendants Haymore and Interstate were charged with negligence in the operation of their respective vehicles. Count III of the amended complaint alleged the acts of Interstate's driver constituted wilful and wanton misconduct and sought recovery of punitive damages. Defendant Haymore was not a party defendant to Count III. In a separate verdict the jury found in favor of the plaintiffs and against the appellants on all three counts. Defendant Haymore was held not liable on Counts I and II. Combined damages on Counts I and II were assessed at $75,000 and in Count III were assessed at $100,000. Interstate appeals only from the judgment of Count III which assessed the punitive damages.

■■ The justification for the imposition of punitive damages is similar to justification for criminal penalties—to punish and deter undesirable conduct. (*Mattyasovszky v. West Towns Bus Co.*, 61 Ill. 2d 31, 330 N.E.2d 509.) Where the conduct of the defendant is characterized by the requisite circumstances of aggravation, punitive damages are awarded as a

punishment to the wrongdoer and as a means to deter the particular defendant and others from committing like offenses in the future. *Eshelman v. Rawalt*, 298 Ill. 192.

Considering these objectives, an assessment of punitive damages is more difficult to justify where an otherwise innocent principal is held liable solely on the basis of *respondeat superior*.

> "Perhaps the chief among the various controversies which have surrounded punitive damages has been over whether they may be awarded against an employer vicariously liable for the tort of his servant where he neither authorized nor ratified it." Prosser, Torts §2, at 12 (4th ed. 1971).

Those courts considering the issue have followed two general patterns. Some have followed the vicarious liability rule and have held the principal or employer liable whenever the agent or employee could be liable (*D.L. Fair Co. v. Weems* (1944), 196 Miss. 201, 16 So.2d 770; *Southern Camp W.O.W. v. Roland* (1936), 232 Ala. 541, 168 S. 576). Other courts have followed a complicity rule whereby the corporate master is liable for punitive damages only when the superior officers order, participate in, or ratify outrageous misconduct (*Stewart v. Potter* (1940), 44 N.M. 460, 104 P.2d 736; *Roginsky v. Richardson-Merrell, Inc.* (2d Cir. 1967), 378 F.2d 832).

Vicarious liability for punitive damages rests primarily on the deterrent effect to the corporate defendant and others like it. Proponents of the rule cite the incentive towards greater selectivity and supervision of employees (*Goddard v. Grand Trunk Ry. of Canada* (1869), 57 Me. 202; *State ex rel. Coffelt v. Hartford Accident & Indemnity Co.* (1958), 44 Tenn. App. 405, 314 S.W.2d 161), or the necessity of institutional liability to discourage the types of tort committed. Morris, *Punitive Damages in Personal Injury Cases*, 21 Ohio St. L.J. 216 (1960).

The ability to better control the actions of the employee through greater supervision is often illusory. As in the instant case, employees may perform their duties where direct supervision is impossible. Further, increased supervision may well be ineffective to prevent the occurrence of certain torts for which punitive damages may be assessed. Thus society's interest in the preservation of the social order through punishment and deterrence may frequently not be advanced when punitive damages are assessed vicariously against the corporate master.

The complicity rule, on the other hand, seems consistent with the rationale behind the concept of punitive damages. Either as a basis for punishment or for deterrence of wrongdoers, some deliberate corporate participation should be shown before this sanction is applied. (*Parris v. St. Johnsburg Trucking Co.* (2d Cir. 1968), 395 F.2d 543.) The complicity analysis will allow punitive damages where the institutional conscience of

the corporate master should be aroused while protecting the corporate master from liability for punitive damages when a properly supervised employee acts with requisite circumstances of aggravation. Morris, 21 Ohio St. L.J. 216, 222 (1960).

■■ In a recent case, *Mattyasovszky v. West Towns Bus Co.*, 61 Ill. 2d 31, 330 N.E.2d 509, the Supreme Court indicated approval of the complicity rule as expressed by the Restatement (Second) of Agency §217C (1958), which states:

" 'Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if:

(a) the principal authorized the doing and the manner of the act, or

(b) the agent was unfit and the principal was reckless in employing him, or

(c) the agent was employed in a managerial capacity and was acting in the scope of employment, or

(d) the principal or a managerial agent of the principal ratified or approved the act.' " (61 Ill. 2d 31, 36-37.)

We follow the reasoning of *Mattyasovszky* and accordingly adopt the test therein.

In the instant case, there is a complete failure of evidence to support the award of punitive damages under the adopted principles. Interstate issued to each driver-employee copies of the Interstate Commerce Commission rules of driving plus its own stricter rules. Records were kept of all accidents involving any property damage or personal injury, although not required by Interstate Commerce Commission. A safety program was in effect under which employees were rewarded for safe accident-free driving through a point system which could result in financial rewards. Thus Interstate cannot be said to have authorized its driver Hernandez to ignore the rules of the road in switching lanes without a signal and without checking for passing traffic.

■■ No evidence was introduced which would show Hernandez was unfit and Interstate was liable for employing him. To the contrary, the evidence indicates that Hernandez had years of training and experience as a driver for the U. S. Marine Corps and various private truck lines. Further, Hernandez was an instructor and license examiner for truck drivers while in the service and was well acquainted with I.C.C. rules, Interstate's rules, and Illinois rules. Finally, no evidence that Hernandez was acting in a managerial capacity or that Interstate ratified the act was introduced. Under the rule as adopted, Interstate was not shown to be implicated in the acts of its employee Hernandez and is thus not liable for punitive damages arising out of these acts.

In view of our ruling on defendant's first contention, we find it unnecessary to consider the remainder of defendant's contentions.

For the foregoing reasons, the judgment of the trial court on Count III of plaintiff's complaint is reversed.

Reversed.

KARNS, P. J., and JONES, J., concur.